UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GSL HOLDINGS, LLC,

      Plaintiff,

v.                                 Case No. 21-11664
                                     Honorable Victoria A. Roberts

THE CHARTER TOWNSHIP
OF LYON, et al.,

      Defendants.
_____/

### ORDER: (1) SUSTAINING DEFENDANTS' OBJECTIONS TO EVIDENTIARY HEARING [ECF No. 23]; (2) CANCELLING OCTOBER 5, 2021 EVIDENTIARY HEARING; AND (3) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION [ECF No. 4]

## I.    INTRODUCTION AND BACKGROUND

GSL Holdings, LLC ("Plaintiff") owns approximately 6.2 acres of property (the "Property") in Lyon Township (the "Township"). In November 2020, Plaintiff began planning to build a structure on the Property (the "Project") to lease to Moba Americas, Inc. ("Moba").

Plaintiff says that during a pre-application meeting between representatives of Plaintiff and the Township on November 12, 2020, Township representatives assured that the Township would do what it could to help Plaintiff obtain construction approval for the Project as soon as reasonably possible. After that meeting, Plaintiff entered into a lease

agreement for the Property with Moba.  Under the agreement, Moba needed to take occupancy and begin operations by October 1, 2021.

During a Township meeting on January 11, 2021, the Township Planning Commission approved the site plan for the Project.  Plaintiff says that after this meeting, the Township began a pattern of delaying the beginning of construction, despite its knowledge that Moba needed to begin operations by October 1, 2021.

Ultimately, Plaintiff did not meet all requirements under the Township permit ordinance to receive shell and foundation construction permits by the date that would allow Moba to take occupancy in October 2021.  Moba terminated its lease with Plaintiff on May 4, 2021 and found a different property to lease.

Plaintiff filed suit against the Township and Township Supervisor, John Dolan ("Defendants") on July 18, 2021.  It alleges violation of: (1) equal protection rights; (2) due process rights; (3) First Amendment rights; and (4) Michigan's Freedom of Information Act, M.C.L. 15.231 et seq. Plaintiff seeks injunctive relief and $18 million in damages – which it says is its lost income from the lease with Moba.

Before the Court are: (1) Plaintiff's motion for a temporary restraining order and/or preliminary injunction [ECF No. 4] – which the Court set for an

October 5, 2021 evidentiary hearing; and (2) Defendants' objections to evidentiary hearing [ECF No. 23].  The motion and objections are fully briefed.

A hearing is unnecessary.  The Court **SUSTAINS** Defendants' objections and **CANCELS** the evidentiary hearing.

For the reasons below, the Court **DENIES** Plaintiff's motion for temporary restraining order and/or preliminary injunction.

## II.   LEGAL STANDARD

When determining whether to issue a temporary restraining order or preliminary injunction, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether issuing the injunction would serve the public interest.  *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  These factors are not prerequisites to issuing a preliminary injunction; they are factors the Court must balance against each other.  *Id.*

A preliminary injunction is an extraordinary remedy that will only be granted if Plaintiff shows that circumstances clearly demand it.  *Id*.  "The purpose of a preliminary injunction is simply to preserve the status quo;

3

thus, findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

## III.   DISCUSSION

Plaintiff's motion is based only on its first two claims (i.e., equal protection and due process violations).  Plaintiff asks the Court for an order requiring Defendants to issue building permits for its Project, allowing it to begin construction of a foundation and building shell on its Property. Plaintiff says Defendants wrongfully prevented it from developing the Project and caused it to miss the October 2021 deadline for Moba to take occupancy, which resulted in it losing the lease with Moba.

However, contrary to Plaintiff's allegations that Defendants caused it to miss the October 2021 deadline, facts show that the Township did everything it could to accommodate Plaintiff's attempt to meet that deadline – including expediting its review process at Plaintiff's request by engaging in a simultaneous engineering/Planning Department review and review in the Building Department.

In reality, despite the Township's expedited review, the Township did not issue the shell and foundation construction permits because Plaintiff failed to complete all necessary steps for issuance of the permits under the

4

Township Code *until just a few days ago*.  Indeed, until September 27, 2021, Plaintiff had not received a permit to construct an on-site septic system ("Septic Permit") from Oakland County Health Division ("OCHD").

Under Section 15-9(c) of the Township Code, Plaintiff was required to submit the Septic Permit to the Township before the Township Engineer could approve Plaintiff's engineering construction plan.  [*See* ECF No. 1-29, PageID.249 ("Applicant must submit copies of the documentation from other agencies . . . to the Township Engineer indicating that the plans have received their approval for work . . . prior to the Township Engineer granting any engineering construction plan approval.")].

Throughout this process, the Township informed Plaintiff that it could not issue building permits until Plaintiff engaged in a utility preconstruction meeting, and that the utility preconstruction meeting could not be held until after Plaintiff received the Septic Permit from OCHD and provided it to Defendants.  [*See, e.g.*, ECF No. 4-12, PageID.394; ECF No. 26-2, PageID.994].

Because Plaintiff failed to receive the Septic Permit, the Township could not hold the required utility preconstruction meeting or issue the shell and foundation construction permits.

In relevant part, Township Code § 15-10 provides:

5

Sec. 15-10. – Permits/construction.

(a)     A <u>preconstruction meeting will not be scheduled</u> until all of the required items listed in the engineering approval letter are received by the township engineer.

(b)     <u>When engineering construction plans have been approved</u>, <u>the applicant may apply for a building permit from the township building department</u>. The number of permits and any other building issues will be at the discretion of the building official. <u>Prior to the start of construction, the applicant must secure all necessary permits from other agencies as applicable to the project and attend a preconstruction meeting</u>.

* * *

(e)     All other permits and payment of associated fees required to perform the work shall be the responsibility of the applicant and/or his designee. <u>No construction may commence until permits, as applicable to the project are secured from the appropriate agencies</u>.

[ECF No. 1-29, PageID.249-50 (emphasis added)].

Furthermore, Sections 15-2(h) and (i) of the Township Code provide:

(h)     *Permits—Jurisdiction—Notification*. <u>The proprietor shall obtain, or cause his contractor(s) to obtain all permits, post all required bonds, and pay all required fees for each and all permitting agencies . . . having jurisdiction over the land and rights-of-way involved in the project</u>. Proper notification shall be given to each governmental agency and utility company prior to beginning of construction. The Charter Township of Lyon shall require a minimum 48-hour notice prior to commencement of any construction.

(i)     *Preconstruction meeting*. <u>A preconstruction meeting will be held when all permits, bonds, and insurance are submitted to the Township Engineer</u> and all required

6

escrow deposits are submitted to the Lyon Township
Building Department.

[*Id.* at PageID.246 (underline emphasis added)].

Plaintiff did not receive the required Septic Permit from OCHD until
September 27, 2021.  However, both the above portions of the Township
Code and the March 4, 2021 letter from the Township Engineer make clear
that that permit is required before a utility preconstruction meeting can be
held.  [*See id*; ECF No. 26-2, PageID.994].

Clearly, Plaintiff had not completed all necessary steps under § 15-10
for a utility preconstruction meeting or for permits to begin construction.
Defendants correctly did not hold a utility preconstruction meeting or issue
permits allowing Plaintiff to begin construction pursuant to § 15-10 and §
15-1(h) and (i).

Now that Plaintiff received the Septic Permit from OCHD, the
Township held an expedited utility preconstruction meeting on September
29, 2021 – i.e., just two days after Plaintiff received the Septic Permit.  The
following day – September 30, 2021 – the Township informed Plaintiff via
email that the permits for the shell and foundation construction were ready
to be picked up upon payment of the permit fees.  Plaintiff responded that it
would pick the permits up today – October 1, 2021.  Minutes ago,

7

Defendants' counsel informed the Court via email that Plaintiff did pick up the permits.

As discussed below, the preliminary injunction factors weigh heavily against Plaintiff.  Plaintiff is not entitled to a preliminary injunction.

## A.    Plaintiff is Not Likely to Succeed on the Merits

Plaintiff is not likely to succeed on the merits of its first two claims because – as set forth above – Defendants followed the Township ordinances in refusing to issue Plaintiff building permits; it does not appear Defendants violated Plaintiff's constitutional rights to equal protection or due process in doing so.

### i. <u>Equal Protection Claim</u>

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."  *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011).

Plaintiff pursues its equal protection claim under the "class-of-one" theory recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam) (where plaintiffs alleged that, as a condition of being connected to the municipal water supply, the village

8

demanded a 33-foot easement from plaintiffs but required an easement of only 15 feet from similarly situated neighbors). Specifically, Plaintiff alleges that Defendants treated them differently than other similarly-situated developers by demanding that Plaintiff enter into a hold harmless agreement that is vastly different than what other developers were required to execute.

Class-of-one claims are "viewed skeptically" because they "have the potential to turn into an exercise in which juries are second-guessing the legislative process." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012). "That is why a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Id.* at 462.

Plaintiff must show it was "treated differently than those similarly situated in all material respects." *Id.* Plaintiff also must show "the adverse treatment [it] experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Id.* (citation omitted). Plaintiff can demonstrate this "by negativing every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will." *Id.* (citation omitted).

Plaintiff is not likely to succeed on its equal protection claim because Plaintiff cannot show that it was similarly situated to others who received different treatment.

Plaintiff alleges that SW North America ("SWNA") is a similarly situated developer who was issued a building permit before it had a septic permit.

However, as Defendant argues, Plaintiff cannot show that SWNA is similarly situated in all material respects.  For example, SWNA received its permit for a project that occurred in 2016-2017, when the Township's Building Department Coordinator and reviewing policies were different. *See Taylor Acquisitions, LLC v. City of Taylor*, 313 Fed. Appx. 826, 836-37 (6th Cir. 2009) (citation omitted) ("In the land-use context, timing is critical and . . . can supply an important basis for differential treatment. . . . [C]ourts must be sensitive to the possibility that differential treatment—especially differential treatment following a time lag—may indicate a change in policy rather than an intent to discriminate. . . . [T]he most reliable comparisons are likely to be from roughly the same time frame."); *Tuscola Wind III, LLC v. Almer Charter Twp.*, 327 F. Supp. 3d 1028, 1047 (E.D. Mich. 2018) ("'[T]iming and context' are especially relevant to the similarly-situated inquiry.").

Moreover, Plaintiff will not likely be able to show that "the adverse treatment [it] experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational."  *Loesel*, 692 F.3d at 461.

As Defendants explain, they required the hold harmless agreement because they were letting Plaintiff proceed with construction of the shell and foundation before receiving the Septic Permit from OCHD.  If OCHD did not grant the permit, the Project plans would need to change at potentially a considerable cost.  Since the Township was allowing Plaintiff to proceed with the construction before it was entitled, the hold harmless was used as protection, in case OCHD did not grant the Septic Permit. [*See* ECF No. 1-23, PageID.162 ("The agreement should also state that if the applicant is unable to receive required permit from Oakland County . . . they will be required to extend public water main from Grand River Avenue . . . to their site . . . at their expense.")].

Plaintiff is not likely to succeed on its equal protection claim.

### ii.  Due Process Claim

Plaintiff alleges a substantive and procedural due process claim.  In support of those claims, Plaintiff alleges it had a constitutionally protected interest in the building permits.  It says the Township issued the permits on

11

March 31, 2021 and then revoked the permits days later before Plaintiff could retrieve them.

Plaintiff alleges Defendants violated its: (1) procedural due process rights by revoking the building permits without providing any procedure by which Plaintiff could appeal the revocation; and (2) substantive due process rights by denying it the right to begin construction under building permits that had already been approved.

To succeed on either of its due process claims – procedural or substantive – Plaintiff must show, among other things, the existence of a protected property interest. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).  Plaintiff is not likely to demonstrate this.

Whether a party has a property interest is traditionally a question of state law.  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  In the context of planned construction requests, "Michigan courts have continually reaffirmed that a building permit and some substantial construction must have commenced before property rights can vest."  *Seguin v. City of Sterling Heights*, 968 F.2d 584, 591 (6th Cir. 1992) (citing *Schubiner v. W. Bloomfield Twp.*, 133 Mich. App. 490, 501 (1984) ("Where the building permit has been applied for but has not been issued,

12

'vested rights' are not acquired even though substantial sums have been expended by the applicant.")).

Plaintiff says the Township issued the building permits on March 31, 2021.  Plaintiff is wrong.  Plaintiff relies on plan documents that were approved by the Township Engineer.  But even if the Township Engineer approved the plan, there is no evidence the Township Building Department approved the plan or – most importantly – *issued* the building permits.  That is because the Township never did issue the building permits.

The following excerpt from an April 6, 2021 email from Plaintiff's representative to the Township Building Coordinator demonstrates that the building permits were never *issued*:

> When we spoke last week you indicated Building <u>was waiting to confirm</u> with engineering <u>that it was okay to release the shell permit</u>. As we understand it CES has indicated that they were okay from <u>an engineering standpoint</u> with releasing the shell permit. <u>Is it possible to get released on footings only</u>?

[ECF No. 1-16, PageID.101 (emphasis added)].

As the email shows, the Building Department had not issued the permits; it was waiting to hear from CES – the Township Engineer. Moreover, considering that Plaintiff had made it abundantly clear numerous times that expediency was of critical importance due to Moba's lease

13

deadline, it is doubtful Plaintiff would have waited until April 5 to pick up permits which it says were issued on March 31.

Because Plaintiff likely cannot show that the Township issued the building permits, it likely will not be able to establish that it has a protectable property interest.  As such, Plaintiff is not likely to succeed on the merits of its substantive and procedural due process claims.

Plaintiff based its motion on counts 1 and 2 of its complaint.  Because Plaintiff is not likely to succeed on the merits of either count, the first factor weighs against issuance of a preliminary injunction.

Nevertheless, even if Plaintiff could show a likelihood of success on the merits, it would still not be entitled to a temporary restraining order or preliminary injunction because it will not suffer irreparable harm absent an injunction and because the third and fourth factors weigh against injunctive relief.

## B.  Plaintiff Will Not Suffer Irreparable Harm Absent an Injunction

The Supreme Court has explained that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an

14

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Plaintiff fails to show that irreparable injury is likely without an injunction for two reasons.

First, Plaintiff has an adequate remedy at law.  Plaintiff alleges that Defendants' actions caused it to lose the Moba lease.  Plaintiff seeks approximately $18 million in lost rental income under the terms of that lease, as well as an unspecified amount of money damages for the loss of increased asset valuation by virtue of the Moba lease and the loss of goodwill and reputation.

A preliminary injunction will have no effect on Plaintiff's relationship with Moba; Moba leased a different property.  However, if Plaintiff succeeds on its claims, it can recover monetary damages that will compensate it for its injury.  Therefore, Plaintiff cannot show a likelihood of irreparable injury from the denial of a preliminary injunction.  *See Overstreet*, 305 F.3d at 578 ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.").

Second, the thing that was holding up the utility preconstruction meeting and issuance of the building permits (i.e., the OCHD issued Septic Permit) is no longer an issue.  Plaintiff received that permit on September

27; the utility preconstruction meeting occurred on September 29; the Township advised Plaintiff the building permits were ready on September 30; and Plaintiff obtained the permits today.

In support of its argument that it will suffer irreparable injury absent an injunction, Plaintiff says: "It cannot be disputed that the Township is no longer processing plaintiff's application to develop [the Project].  Plaintiff has no remedy other than an injunction from this Court."  [ECF No. 16, PageID.724].  This could not be further from the truth.

The Township issued the building permits – the main remedy Plaintiff seeks in its motion for preliminary injunction.  Plaintiff is not in need of injunctive relief to receive permits.  Now, Plaintiff can follow the normal administrative process.

The second factor weighs against preliminary injunctive relief.

### C.    The Third and Fourth Factors Weigh Against an Injunction

The third and fourth factors – i.e., whether the injunction would cause substantial harm to others and whether issuing the injunction would serve the public interest – also weigh against injunctive relief.

Essentially, Plaintiff asks the Court to require the Township to issue it building permits *even though it failed to comply with the requirements to obtain building permits under the Township ordinance*.

16

The Township's responsibility to further public health, safety, and welfare is the reason for building codes and permit ordinances. It is in the public's interest that the Township enforce these ordinances to prevent harm to the public.

If the Court granted the relief Plaintiff seeks, the Township would be required to grant Plaintiff building permits even if Plaintiff's building plans did not comply with construction code and/or were unsafe. Requiring the Township to issue building permits outside of the ordinary review process could cause substantial harm to others and would certainly not serve the public interest.

The final two factors weigh against Plaintiff.

## IV.   CONCLUSION

For the reasons above, the Court: (1) **SUSTAINS** Defendants' objections to evidentiary hearing [ECF No. 23]; (2) **CANCELS** the October 5, 2021 evidentiary hearing; and (3) **DENIES** Plaintiff's motion for temporary restraining order and/or preliminary injunction [ECF No. 4].

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 1, 2021