UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GSL HOLDINGS, LLC,

     Plaintiff,

v.
                                  Case No. 21-11664
                                  Honorable Victoria A. Roberts

THE CHARTER TOWNSHIP
OF LYON, et al.,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 46]

GSL Holdings, LLC ("GSL"), a real estate developer, filed suit against Lyon Township and John Dolan ("Dolan") for allegedly preventing it from developing a real estate project. GSL alleges violations of: (1) equal protection; (2) due process; (3) the First Amendment; and (4) Michigan's Freedom of Information Act ("FOIA").

Before the Court is Defendants' motion for summary judgment. The Court held a hearing on December 12, 2022. Because GSL fails to establish a genuine dispute of material fact in its equal protection and due process claims, the Court **GRANTS** the motion on these issues. The Court **DENIES** Defendants' motion on GSL's First Amendment and FOIA claims.

1

## II.    FACTUAL BACKGROUND

GSL owns approximately 6.2 acres of property in Lyon Township. In November 2020, GSL planned to build a structure on the property (the "Project") to lease to prospective tenant Moba Americas, Inc. ("Moba").

GSL says that during a pre-application meeting on November 12, 2020, Township representatives assured it that the Township would do what it could to help GSL obtain construction approval for the Project as soon as reasonably possible.  After that meeting, GSL entered into a lease agreement with Moba.  Under the agreement, Moba needed to take occupancy and begin operations by October 1, 2021. The subsequent chronology of events is as follows.

### A. 2021 Events

During a Township meeting on January 11, 2021, the Township Planning Commission approved the site plan for the Project.

A Township ordinance required GSL to obtain a septic permit from the Oakland County Health Division ("OCHD") before the Township could issue GSL the necessary building permits to begin construction on the Project. Due to issues with OCHD, GSL could not obtain the necessary septic permit by March of 2021.

On March 8, 2021, GSL representative Maria D'Agostini emailed

2

Township officials expressing the need for the Project to proceed expeditiously. She requested a conference call with department heads to discuss moving the Project forward despite the lack of all required permits. At the end of the email, D'Agostini wrote: "I have also copied the Board of Trustees on this email should their participation be required." [ECF No. 30-8, PageID.1108-09].

On March 9, 2021, a Township attorney responded, stating:

Maria,

Please do not communicate directly with the members of the Township Board in this fashion. It is inappropriate.

In addition, there is a process involved in any development and every developer believes that they should have their plans expedited in some fashion. Your veiled threats do not make the process go any faster or smoother.

I understand you have been working with the Township administration on moving this forward. That is the correct way to proceed.

Carol

[ECF No. 30, PageID.1050].

GSL says that after this email exchange, the Township began a pattern of delaying construction on the Project, despite its knowledge that Moba needed to begin operations by October 1, 2021.

On March 10, 2021, a Township representative emailed another

Township representative, stating: "Maria went too far on that email, copying the entire board. BS!! I was literally on the phone with the Building Dept begging them to take the plans when she sent that bull!" [ECF No. 15-18, PageID.2396].

On March 31, 2021, GSL "received notice that the building permit was ready to be picked up from the Township offices . . ." [ECF No. 30, PageID.1052-3].

5 days later on April 5, 2021, the Township building coordinator emailed D'Agostini, stating that "[p]er John Dolan [a defendant in this action], it has been decided not to issue the building permit until after your utility Pre-Con." [ECF No. 30-15, PageID.1132].

On April 6, 2021, D'Agostini replied to the email, expressing confusion that the Township decided not to issue the building permit when it had already agreed to do so the previous week.

On April 7, 2021, another Township representative responded to D'Agostini:

Maria,

Per our discussion, the Building Department will not issue any building permits until after the Utility Pre-Con meeting is held. Please send us your permits as you receive them and once all of the required items are submitted on the approved engineering letter (for a Utility Pre-con) we will schedule it.

4

[ECF No. 30-17, PageID.1137].

The same day, D'Agostini replied:

Hi Leslie:

I did reach out to the building department about the possibility of footing approval. That would at least buy us the time we need to get our septic approval. I expect to have our Road commission permits this week.

We tentatively have our footing contractor scheduled for the week of April 19. We meet with our contractor today to discuss schedule. If we cannot stay on track with footings this project will be severely delayed and will likely kill the Moba deal. I know I may seem like a pest but we are clearly trying to do whatever we can to keep this project on track. Your assistance throughout this whole thing has been appreciated. Hopefully the Township will reconsider.

[ECF No. 30-18, PageID.1142].

A few minutes later, the Township representative responded: "Maria, [t]he Building Dept has been pretty clear. No building permits until a utility pre-con." *Id.* at PageID.1141 (underline emphasis in original).

On April 29, 2021, GSL says that Dolan informed it that the Township would release the building permits prematurely (i.e., before GSL obtained the necessary septic permit and held the utility "pre-con" meeting) only if GSL agreed to a "hold harmless" agreement. A hold harmless is an agreement between parties that states that one party will not hold the other party liable for the risk of taking a certain action.

On May 3, 2021, an attorney for the Township sent GSL a proposed

5

hold harmless agreement. GSL says that the proposed agreement "include[d] unjustified onerous and burdensome language such as requiring plaintiff to install a multi-million-dollar sanitary sewer for the entire Lyon Industrial Research Center subdivision if plaintiff would not be able to obtain a [sic] Onsite Sewage Disposal System Permit, among other issues." [ECF No. 30, PageID.1056-7]. GSL refused to sign the agreement, protesting this hold harmless language.

GSL also says that it was not permitted to connect to the Township's sanitary sewer line from the rear of its property, although Township engineering staff previously informed it that such a connection could be made. At the time, Township policy expressed a preference for connections at the front of a developer's lot, but it contained no provision that such a connection was mandatory. After this litigation began, the Township changed its Design and Construction Standards to explicitly provide that sanitary sewer line connections could only be made from the front of a lot.

On May 10, 2021, Township representative Carol Rosati emailed GSL representative Emily Kunath:

> . . .
>
> For the record, as a final attempt to once again assist you with the problem you created, the Township agreed to consider a Hold

6

Harmless Agreement. The Township is under no obligation whatsoever to issue the permits you requested as you have not received all required approvals to be entitled to those permits. Nonetheless, I sent you a proposed agreement. Your response was to assert that the agreement was onerous. However, the terms of the agreement were mandatory for the Township to consider allowing you to prematurely proceed with construction. The indemnification language is standard and has previously been accepted by other developers. The issue of the connection to the sewer has been addressed in separate email to you. You had the choice to accept the terms of not. Since you have rejected the terms, the permits you have requested will not be issued until you have complied with the process and received all approvals for those permits.

The Township has attempted to assist you where it can in moving forward with this project. The Township has in place, and has always had in place, a process to obtain approval for a project, as well as a process which must be followed before permits can be issued . . . . Those processes are well defined in the Township's ordinances, as well as available through the Township's planning and building departments. And, those processes were explained to D'Agostini through repeated contacts and meetings since last winter. The rush you found yourself in was not as a result of anything the Township did or did not do, but simply your failure to diligently follow the required processes.

[ECF No. 30-26, PageID.1204].

On May 13, 2021, Kunath responded:

. . .

You may know that Lyon Township Building Department indicated to our office that a shell building permit was available for pick up on March 31, 2021, only to have them recant five (5) days later per the directive of John Dolan himself. The same bait and switch occurred in early May when Dolan indicated that he would release the permit with a hold harmless from D' Agostini, only to receive an agreement that tied D' Agostini to an untenable position of installing a sewer

system throughout the entire Lyon Township Industrial/Research Centre Subdivision. This requirement in the hold harmless agreement would have added millions to the cost of the building. In this fashion, the Township has changed positions repeatedly on its willingness to work in limited timeframes. The actions of the Township most certainly resulted in confusion, delay, loss of a ten-year tenant, and enormous increase in construction cost.

Ms. Rosati, I would disagree that the "rush we found ourselves in" was not the result of the Township's actions. To the contrary, the rush was *because of* the Township's actions.

[ECF No. 30-30, PageID.1327-9] (emphasis in original).

Ultimately, GSL did not obtain a septic permit or sign the hold harmless agreement by a date that would allow Moba to take occupancy by October 2021. Moba terminated its lease with GSL on May 4, 2021 and found a different property to lease.

On July 18, 2021, GSL filed suit against the Township, seeking injunctive relief and $18 million dollars in damages for lost income from the Moba lease. GSL also filed a motion for preliminary injunction. It asked the Court to compel Defendants to issue GSL a building permit without forcing it to sign a hold harmless agreement. The Court denied the motion. [*See* ECF 29].

On August 19, 2021, GSL attempted to submit an application for speculative building status on the Project, as outlined by M.C.L. 207.553(8). Under the statute, if an entity is granted speculative building

8

status, it could then apply for a tax abatement from the Township. The Township did not accept GSL's application for processing, citing its tax abatement policy. The policy, implemented six years before GSL submitted its application, provides that the Township will not award tax abatements to applicants who have litigation pending against the Township.

On September 27, 2021, GSL obtained the necessary septic permit from OCHD. Two days later, the Township held a utility preconstruction meeting. The next day, the Township informed GSL via email that the permits for the shell and foundation construction were ready to be picked up upon payment of permit fees. The permits issued on October 1, 2021.

### B. 2022 Events

On March 8, 2022, GSL again submitted an application for speculative building status. The Township accepted it for processing.

On April 4, 2022, the Lyon Township Board of Trustees adopted a resolution to discontinue issuing tax abatements in any form to all entities.

On July 5, 2022, the Township Board held a public hearing on GSL's application for speculative building status. Dolan recused himself from voting on the application given his status as a defendant in this action. The Township Board denied GSL's application, citing its April 4, 2022 policy

9

and that the application "did not score high enough."

Before tax benefits can be granted to an entity, a township must first approve the creation of an Industrial Development District ("IDD") in the area where the entity's property is located. GSL's property was located in IDD #11. But on October 3, 2022, the Township revoked a portion of IDD #11—the portion where GSL's properties are located. Because of this, no tax benefits could be granted in the area until IDD status is restored.

## III.   LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

The movant bears the initial burden to inform the Court of the basis for the motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

10

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is the mere existence of a scintilla of evidence in support of the non-movant's position. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

The Court must view all submitted evidence, facts, and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970). The district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994). The necessary inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (internal quotes omitted).

## IV.   ANALYSIS

GSL fails to establish a genuine dispute of material fact in its equal protection and due process claims. Summary judgment in favor of Defendants is warranted on these claims. However, GSL establishes that

11

disputed facts warrant denial of summary judgment in its First Amendment and FOIA claims.

### A.    Defendants Are Entitled to Summary Judgment on GSL's Equal Protection Claim.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011). Plaintiff pursues its equal protection claim under the third category, otherwise known as a "class-of-one" claim. Class-of-one plaintiffs are required to show that (1) a government entity treated plaintiff differently than it did a similarly situated individual, and (2) the government lacks a rational basis for the different treatment. *See id.*

First, GSL alleges that Defendants treated GSL differently than another similarly-situated real estate developer, SW North America ("SWNA"). GSL alleges that the Township allowed SWNA to construct its building without a septic permit and without executing a hold harmless agreement, but "abruptly began demanding strict adherence to its ordinances and demanding GSL execute an onerous hold harmless agreement" before they would allow GSL to do the same [ECF No. 51, PageID.2280]. GSL alleges that Defendants lack a rational basis for treating it differently.

12

GSL also asserts that it was treated differently than other developers when Defendants refused to allow GSL to connect to a sewer line at the rear of its property, even though Township engineering staff had previously informed GSL that such a connection was possible and municipal code did not explicitly ban such connections at the time. Although this may be true, this argument cannot support an equal protection claim because GSL does not allege that a similarly situated entity (whom the Township allowed to connect from the rear of its property) exists. The Court declines to include this allegation in its equal protection analysis.

Class-of-one claims are "viewed skeptically" because they "have the potential to turn into an exercise in which juries are second-guessing the legislative process." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012). "That is why a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Id.* at 462.

1. GSL cannot show that SWNA is a similarly-situated entity.

To succeed on a class-of-one claim, a plaintiff must first prove that it was treated differently than similarly situated individuals. *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009); *see also Vill. of Willowbrook v. Olech,* 528 U.S. 562, 565 (2000). To satisfy this threshold inquiry, the plaintiff must allege that the related entity was similarly situated

13

in all material respects. *Taylor Acquisitions*, 313 F. App'x at 836. Timing and context are especially relevant to the similarly-situated inquiry. *Id.* In determining this, the *Taylor Acquisitions* court relies on the First Circuit:

> In the land-use context, timing is *critical* and, thus, can supply an important basis for differential treatment . . . . [C]ourts must be sensitive to the possibility that differential treatment—especially differential treatment following a time lag—may indicate a change in policy rather than an intent to discriminate. Consequently, the most reliable comparisons are likely to be from roughly the same time frame.

*Id.* at 836–37 (emphasis added).

If the plaintiff cannot show that it was similarly situated in all material respects, the defendant is entitled to summary judgment. *See id.*

GSL cannot satisfy the threshold prong of its class-of-one claim because it cannot show that it was similarly situated to GSL in all material respects. Importantly, SWNA received its building permit for a project that occurred in 2016-2017. The events of this case began in 2020. A difference in time weighs strongly against a finding that two entities are similarly situated. *See id.*

Additionally, SWNA received its building permit when the Township had a different building coordinator than the building coordinator in GSL's case. GSL says this is immaterial because only the Township's building *official*, David Herriman, had authority to issue the building permit. Herriman held his position since 2008, and was the only individual with the authority to

14

issue both SWNA and GSL's building permits. This is persuasive. However, even assuming that GSL satisfies the "similarly-situated entity" prong, GSL cannot show that Defendants lack a rational basis for their actions.

2. GSL cannot show that Defendants lack a rational basis for their actions.

After successfully showing that it was treated differently than a similarly-situated entity, a class-of-one plaintiff must demonstrate that the challenged government action lacks a rational basis. *Taylor Acquisitions*, 313 F. App'x at 837. It can do so by negating every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will. *Id.*

i. *Negating every conceivable basis*

GSL carries the burden to negate "every conceivable basis" for the government's actions. *Id.* To overcome this burden, a plaintiff "must demonstrate that the differential treatment [it] was subjected to is so unrelated to the achievement of *any* combination of legitimate purposes that the court can only conclude that the [government's] actions were irrational." *Id.* (internal quotes omitted) (emphasis added). GSL cannot do this.

A defendant has no obligation to produce evidence to sustain the rationality of its actions. *Id.* Its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data. *Id.*

15

Instead, "[t]he burden falls squarely to the plaintiff, who must overcome the presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law." *Id.* (internal quotes omitted).

Although not required, Defendants produced evidence to support the hold harmless requirement: the Township typically requires hold harmless agreements in cases where it grants a building permit before a developer has received all required permits so that it is not exposed to liability should the unissued approvals eventually be denied.

What is troubling, though, is that Defendants issued SWNA its building permit without requiring it to sign a hold harmless agreement. This does run afoul of Defendants' policy. Defendants concede that Patty Johnson, the building official who issued the SWNA building permit, breached Township policy when she granted the permit without requiring SWNA to sign a hold harmless agreement. Johnson had no involvement in GSL's situation.

Regardless of the relative strength of this rationale, Defendants provided an additional basis for their actions: they assert that the hold harmless agreement it required GSL to sign was drafted for the specific circumstance at hand. Before GSL, no other entity had requested that the Township prematurely release a building permit to a developer who did not have a concrete plan as to how its building would dispose of waste.

16

Unlike SWNA, GSL asked the Township for permission to change its septic system to a sanitary sewer system. Due to the unique circumstances of GSL's case and the high risk associated with issuing a building permit before GSL was certain of how it would dispose of waste, Defendants assert they drafted a demanding hold harmless agreement to account for these higher stakes.

These are reasonable and appropriate objectives to meet the rational basis test. Critically, GSL cannot show that "the adverse treatment [it] experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Taylor Acquisitions*, 313 F. App'x at 837.

ii.   *Animus or ill will*

GSL cannot show that Defendants' actions were motivated by animus or ill-will as an alternative way to establish lack of a rational basis.

To demonstrate animus or ill-will, "a plaintiff must prove that the challenged government actions were motivated by *personal* malice *unrelated to the defendant's official duties." Klimik v. Kent County Sheriff's Dep't,* 91 Fed. Appx. 396, 401 (6th Cir. 2004) (internal quotes omitted) (emphasis added). For example, in *Bower v. Vill. of Mount Sterling*, 44 F. App'x 670, 678 (6th Cir. 2002), the Sixth Circuit found that the plaintiff sufficiently alleged

17

lack of a rational basis when he provided evidence that, due to personal malice involving the plaintiff's family ties, a mayor manipulated police hiring procedures to deny him a full-time job.

Relatedly, in *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001), the Seventh Circuit stated that the plaintiff could present a class-of-one claim by showing that the state government took an action that "was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective") (internal quotes omitted). These cases support that to establish lack of rational basis by way of ill will or animus, the animus must be toward the plaintiff personally, and without a legitimate state objective.

The evidence GSL provides to support animus includes a Township representative's email, stating: "Maria went too far on that email, copying the entire board. BS!! I was literally on the phone with the Building Dept begging them to take the plans when she sent that bull!" [ECF No. 15-18, PageID.2396]. GSL also alleges that after its email to the Township Board, Defendants began to delay the Project out of spite.

This is not enough to establish *personal* animus toward GSL. Even viewed in a light most favorable to the plaintiff, GSL "failed to produce evidence that [Defendants] were motivated by any kind of personal malice or vindictiveness *unrelated to their official duties or policy positions*." *Taylor*

18

*Acquisitions,* 313 Fed. Appx. at 838 (emphasis added). Like the Sixth Circuit ruled in *Taylor Acquisitions*, at most, the proffered evidence demonstrates animus toward the *project,* not toward GSL itself for personal reasons. *See id.* GSL cannot meet the heavy burden to show that Defendants lacked a rational basis for their conduct.

There is no dispute of material fact on GSL's class-of-one equal protection claim. Summary judgment in favor of Defendants is proper.

### B. Defendants Are Entitled to Summary Judgment on GSL's Due Process Claims.

GSL alleges substantive and procedural due process violations under the Fourteenth Amendment, asserting that it had a constitutionally protected interest in the building permit and was entitled to it. GSL says the Township issued the building permit on March 31, 2021 and then revoked it days later before GSL could obtain it.

GSL alleges Defendants violated its: (1) procedural due process rights by revoking the building permits without providing any procedure by which GSL could appeal the revocation; and (2) substantive due process rights by denying it the right to begin construction under building permits that had allegedly already been approved.

To succeed on either due process claim, GSL must show, among other things, the existence of a protected property interest. *See Daily Servs., LLC*

19

*v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). GSL cannot do this.

Whether a party has a property interest is traditionally a question of state law. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). In the context of planned construction requests, "Michigan courts have continually reaffirmed that a building permit and some substantial construction must have commenced before property rights can vest." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 591 (6th Cir. 1992) (citing *Schubiner v. W. Bloomfield Twp.*, 133 Mich. App. 490, 501 (1984) ("Where the building permit has been applied for but has not been issued, 'vested rights' are not acquired even though substantial sums have been expended by the applicant.")).

The Township never *issued* building permits; it just informed GSL that the permits were *ready* to be picked up. GSL never acquired "vested rights" to the permits. GSL's own Amended Complaint demonstrates that the building permits were never issued: "[o]n March 31, 2021, [GSL representative] Maria Lukosavich received notice that the shell building permit *was ready* to be picked up from the Township offices . . ." [ECF No. 30, PageID.1052-3 (emphasis added)].

Without this issuance, no property rights vested to trigger the Due

20

Process Clause. GSL could not be "deprived" of the permits when it was not entitled to them to begin with.

The fact that 5 days after the Township informed GSL that the permits were ready to be picked up, it changed course and decided not to issue them, does not establish a due process violation. This is because GSL had no right to the permits in the first instance until it abided by the Township Code and received a septic permit from OCHD.

In relevant part, Township Code § 15-10 provides:

Sec. 15-10. – Permits/construction.

> (a)    A preconstruction meeting will not be scheduled until all of the required items listed in the engineering approval letter are received by the township engineer.

> (b)    *When engineering construction plans have been approved, the applicant may apply for a building permit from the township building department.* The number of permits and any other building issues will be at the discretion of the building official. *Prior to the start of construction, the applicant must secure all necessary permits from other agencies as applicable to the project and attend a preconstruction meeting.*

> * * *

> (e)    All other permits and payment of associated fees required to perform the work shall be the responsibility of the applicant and/or his designee. *No construction may commence until permits, as applicable to the project are secured from the appropriate agencies.*

[ECF No. 1-29, PageID.249-50 (emphasis added)].

The Township Code makes clear that GSL was required to obtain all

necessary permits before the Township could issue GSL building permits. GSL did not obtain the required septic permit from OCHD until September 27, 2021, well after Moba terminated its lease and months after GSL filed this suit. Defendants did not violate GSL's due process rights, because no rights to the permits vested until after GSL complied with Township ordinances.

Additionally, any hold harmless agreement offered by Defendants was a benefit, not a right. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The person must likewise possess "more than a unilateral expectation" of the benefit. *Id.* "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 856 (6th Cir. 2012) (internal quotes omitted). "The law is clear that a party cannot have a property interest in a discretionary benefit." *Id.* at 857.

GSL has not shown a genuine dispute of material fact on either of its due process claims. Because Defendants did not violate GSL's due process rights and Dolan's involvement only relates to GSL's due process claims, it is unnecessary to address his claim of qualified immunity. Dolan is **DISMISSED**.

22

### C.    Defendants Are Entitled to Partial Summary Judgment on GSL's First Amendment Retaliation Claim.

GSL argues that Defendants violated its First Amendment rights by retaliating against it for including the Township Board of Trustees on an email to Township officials. GSL alleges that because of its email, Defendants blocked construction on the Project and withheld necessary building permits. In a second claim for retaliation, GSL argues that Defendants retaliated against it for filing a lawsuit by denying GSL's application for speculative building status.

A First Amendment retaliation claim consists of three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

#### 1. Defendants' Email to GSL does not violate the First Amendment.

On March 8, 2021, GSL emailed Township administration staff members, asking the Township to expedite its protocols to enable GSL to begin building quicker. On that email, GSL copied the members of the

23

Township Board of Trustees. An attorney for the Township responded, in part: "[p]lease do not communicate directly with the members of the Township Board in this fashion. It is inappropriate." [ECF No. 30, PageID.1050].

"The First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). A government entity may regulate the time, place, and manner of speech if the regulation: (1) is content-neutral; (2) is narrowly tailored to serve a significant government interest; and (3) leaves open ample alternative channels of communication. *United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 751–52 (6th Cir. 2004).

Government regulations of speech are content neutral for First Amendment purposes if they are justified without reference to the content or viewpoint of the regulated speech. *Id.* at 752. On the other hand, content-based restrictions regulate speech on the basis of ideas expressed. *Id.*

First, the Township engaged in a time, place, manner restriction when its attorney emailed GSL. The email is not a content-based restriction because it regulates only the manner in which GSL "spoke," not the content. This is evidenced by the fact that the Township attorney told GSL not to

24

communicate with the Board "in this fashion." The restriction made no reference to the content of GSL's email, but rather the manner in which it was sent. This is sufficient to show that the government's restriction was content-neutral.

Second, Defendants assert that the restriction is narrowly tailored to serve a significant government interest: avoiding a violation of the Michigan Open Meetings Act ("OMA"). Under Michigan law, the OMA requires that all meetings of the Township Board occur during a scheduled meeting that is open to the public. Mich.Comp.Laws § 15.263(1) ("All meetings of a public body must be open to the public and must be held in a place available to the general public."). A "meeting" under the statute is defined as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy[.]" *Id.* at § 15.262(b).

The Court is satisfied that Defendants' act of discouraging GSL's email to the entire Township Board serves a significant government interest. GSL attempts to litigate the merits of whether its email violated the OMA, but this analysis is improper. The inquiry is whether combatting potential violations of the OMA is a significant government interest, not whether GSL's email

25

actually *did* violate the OMA. There is a significant government interest to uphold the law.

A content-neutral time, place, or manner regulation of speech is narrowly tailored as long as it does not burden substantially more speech than necessary to further the government's legitimate interests. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Defendants' restriction is not a substantial burden on GSL's speech because GSL had ample ways to communicate its message to the Township Board. *See infra*. Defendants' restriction on the time, place, or manner of GSL's speech to the Township Board is narrowly tailored to serve a significant government interest.

Finally, the challenged restriction leaves open ample alternative channels of communication. If GSL wanted the Township Board to be aware of the Township staff's conduct regarding the Project, it could have appeared at a public Board meeting and spoken during the times designated for public comment; it could have sent a communication addressed to the Township and requested that it be read at a public Board meeting; or it could have emailed members of the Board individually to guard against a potential OMA violation. GSL had ample avenues to communicate its message.

Defendants' content-neutral restriction on GSL's speech does not violate the First Amendment. And—because GSL's act of emailing the Board

is not protected conduct—it cannot be used to support a First Amendment retaliation claim.

>    2. <u>A genuine dispute of material fact exists regarding whether Defendants retaliated against GSL for filing a lawsuit.</u>

In its second claim for retaliation, GSL argues that because it filed suit, Defendants denied GSL's application for speculative building status and revoked the portion of the Township's IDD where GSL's property was located (IDD #11). GSL also alleges that revoking just a portion of an IDD, as opposed to revoking the whole district, is not permitted by Michigan law.

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Looking at the timeline of events after GSL filed suit, a reasonable jury could return a verdict for GSL on its retaliation claim.

For example, after GSL attempted to get the Township's permission to connect to a sanitary sewer line from the back of its lot, the Township changed its Design and Construction Standards to provide that sanitary sewer line connections could only be made from the front of a lot. After GSL included tax abatements as an issue in its lawsuit, the Township Board adopted a resolution to discontinue issuing tax abatements in any form.

Finally, the Township revoked only the portion of IDD #11 where GSL's properties are located, rather than revoking the entire IDD.

These circumstances, taken together, are enough to create a fact issue on retaliation.

Temporal proximity, standing alone, is insufficient to establish a causal connection between protected conduct and an adverse action. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 718 (6th Cir. 2007). But temporal proximity may establish a causal connection if it is coupled with evidence of retaliatory conduct. *Id.* Here, the evidence GSL offers presents more than just suspicious timing; a reasonable jury could find that these facts are evidence of retaliatory conduct. Summary judgment against GSL on this claim is improper.

### D. Defendants Are Not Entitled to Summary Judgment on GSL's Michigan Freedom of Information Act Claim.

On May 13, 2021, GSL submitted a FOIA request to the Township for certain records. The Township did not respond until June 18, 2021.

Under M.C.L. 15.235(2), the Township had 5 business days to respond to GSL's FOIA request or issue a notice for no more than 10 business days to respond. Not only did the Township fail to issue a notice for an additional 10 days to respond, but even if it had, it did not respond within 15 days of May 13, 2021. June 18 is far beyond the statutory time frame to which Defendants

28

could respond to GSL's FOIA request. This alone is enough to deny Defendants' summary judgment motion on this claim in full. Additionally, Defendants did not timely respond to this claim.

The Court **DENIES** Defendants' summary judgment motion on this claim.

## V.    CONCLUSION

Because GSL cannot establish any issues of material fact in its equal protection and due process claims, the Court **GRANTS** Defendants' motion for summary judgment. The Court **DENIES** Defendants' motion on GSL's First Amendment claim alleging retaliation for filing a lawsuit. The Court also **DENIES** Defendants' motion on GSL's FOIA claim. GSL's retaliation and FOIA claims will be tried to a jury.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 9, 2023