UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GSL HOLDINGS, LLC,

     Plaintiff,

v.                           Case No. 21-11664
                               Honorable Victoria A. Roberts

THE CHARTER
TOWNSHIP OF LYON,

     Defendant.

_____/

## ORDER:
## 1) AMENDING ORDER DENYING MOTIONS FOR RECONSIDERATION [ECF NO. 70]; AND
## 2) DENYING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT [ECF NO. 78]

## I. INTRODUCTION

GSL Holdings, LLC ("GSL"), a real estate developer, filed suit against Lyon Township (the "Township") alleging that the Township prevented it from developing a real estate project.

Before the Court is the Township's second motion for summary judgment. The Township argues that, if GSL prevails on liability, GSL cannot establish damages as a matter of law because the Township did not proximately cause harm to GSL.

1

The Court heard oral argument on July 25, 2023.

Because GSL has a viable claim for damages in at least one of its asserted damage categories, summary judgment is improper. The Court **DENIES** the Township's motion. The Court also **AMENDS** its Order Denying Motions for Reconsideration, to the extent that it conflicts with the analysis below.

## II. BRIEF FACTUAL BACKGROUND

In the Township's first motion for summary judgment, the Court granted it in part and denied it in part. *See* [ECF No. 64]. The Court held that one of GSL's retaliation claims (in which GSL argued that the Township retaliated against it for filing a lawsuit), and GSL's Freedom of Information Act ("FOIA") claim (which is not the subject of this motion), would proceed to trial. *See id.*

The parties submitted a Joint Final Pretrial Order ("JFPTO"). There, GSL states that the Township engaged in three retaliatory acts:

1) the "speculative building status" retaliation: when GSL applied to obtain speculative building status on the property in question (which is necessary for potential tenants to obtain tax abatements), the Township denied GSL's application;

2) the "IDD" retaliation: the Township revoked only the portion of an Industrial Development District ("IDD #11") that GSL's property was located in, and left the remaining portions of the District intact; and

3) the "sewer connection" retaliation: when GSL sought to connect to

2

> a sewer line from the back of its lot, the Township refused to allow the connection, and changed its ordinances to explicitly prohibit GSL from making the connection.

*See* [ECF No. 82] (GSL's response to the Township's second summary judgment motion, saying same).

GSL seeks actual and compensatory damages in the form of lost income, increased costs of construction, and loss of goodwill and business reputation.

After the parties submitted the JFPTO, the Township filed a second motion for summary judgment, arguing that GSL could not establish these damages as a matter of law because the Township did not, and could not have, proximately caused harm to GSL. The Township also argues that GSL's damages are impermissibly speculative.

The underlying factual basis for this case is set forth in the Court's order granting in part and denying in part the Township's first summary judgment motion. *See* [ECF No. 64].

This motion concerns only whether, assuming GSL establishes liability, it can collect damages in the categories it lists in the parties' JFPTO. [ECF No. 78, PageID.3035].

3

### III. LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

The movant bears the initial burden to inform the Court of the basis for the motion and must identify portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.

A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Claims that are not supported by admissible evidence are insufficient to establish a factual dispute, as is the mere existence of a scintilla of evidence in support of the non-movant's position. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

The Court must view all submitted evidence, facts, and reasonable inferences in the light most favorable to the non-moving party. *See*

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970).

The district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir.1994). The necessary inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (internal quotes omitted).

## IV. ANALYSIS

In the JFPTO, GSL includes the following categories of damages that it alleges GSL incurred because of the Township's retaliatory acts:

1) Under the terms of the Moba lease with what would have been the existing tenant, GSL would have received at least $8,337,638.00 in rental payments and reimbursements over the initial 10-year term.

2) Lost rents and reimbursements had a tenant occupied the building as planned on October 1, 2021 through September 30, 2023 is $1,118,607 (September 30, 2023 is the soonest the building would be complete for a new tenant if a lease were signed today).

3) Plaintiff has not been able to attract another tenant and mitigate its lost rent from the Moba lease because of the Township's retaliatory action of not processing its application for speculative building tax exemption and then disbanding the district. Plaintiff believes that it would have a tenant but for the Township's actions, based on its track record as a developer.

4) Plaintiff also has incurred or will incur $155,000 in increased costs

for having to construct the septic field rather than connect to the existing sewer line.

5) More importantly, the increase in overall cost of building construction is $1,635,100 as a result of inflationary pressure on construction supplies and labor in the last two years.

6) Further, the loss of value from January 1, 2022 to May 1, 2023 is $4,420,043 as a result of a rising interest rate environment. Valuation based on the capitalization of an income stream is a common valuation method of an income producing asset such as this. Valuation of this asset has gone down tremendously from the date of injury because in January, 2022, cap rates were 5% on an approximate $8.25 psf net-net-net (NNN) rent; and today, cap rates reside at approximately 8% on the same market rent.

7) Plaintiff additionally has suffered lost opportunities and loss of goodwill and reputation, the amounts for which would be determined by the jury.

*See* [ECF No. 78, PageID.3035] (numbering supplied by the Township).

Before delving into each category of damage, the Court discusses the sewer connection retaliation claim.

## A. The sewer connection facts are not relevant to any damage analysis

At the recent motion hearing, the Court suggested—in error—that a sewer connection retaliation claim is viable. It is not, and GSL cannot obtain damages based on the sewer connection retaliation as a matter of law.

1. <u>The Court erred when it suggested that the sewer connection</u>

6

<u>retaliation was at issue.</u>

This outline of procedural events is in order.

In its amended complaint, GSL asserts that because it exercised its First Amendment rights, the Township unconstitutionally retaliated against it in two ways. *See* ECF No. 30, PageID.1074- .1077] (outlining GSL's retaliation claims).

In its first retaliation claim, GSL argued that the Township retaliated against it because GSL included the Township Board of Trustees members on an email to Township officials ("the email retaliation claim"). *Id.* GSL alleged that because of its email, the Township blocked construction on GSL's real estate project.

In its second claim for retaliation, GSL argued that the Township retaliated against it for filing a lawsuit ("the lawsuit retaliation claim"). *Id.* GSL said that because of the lawsuit, the Township denied GSL's application for speculative building status and revoked only the portion of IDD #11 where GSL's properties were located.

The Township moved for summary judgment. The Court granted the Township's motion on the email retaliation claim; it held that because GSL's act of emailing the Board is not protected conduct, it cannot support a First

Amendment retaliation claim. *See* [ECF No. 64, PageID.2813].

The Court denied the motion on the lawsuit retaliation claim, reasoning that the following acts occurred after GSL filed suit, and that there were disputed facts:

(1) "[A]fter GSL attempted to get the Township's permission to connect to a sanitary sewer line from the back of its lot, the Township changed its Design and Construction Standards to provide that sanitary sewer line connections could only be made from the front of a lot;

(2) after GSL included tax abatements as an issue in its lawsuit, the Township Board adopted a resolution to discontinue issuing tax abatements in any form;

(3) the Township revoked only the portion of IDD #11 where GSL's properties are located, rather than revoking the entire IDD."

[ECF No. 64, PageID.2817-8] (numbering added).

The Township moved for reconsideration of the Court's summary judgment order. It argued that the Court misapprehended the timing of the sewer connection facts (see finding (1) above), and that because the sewer connection events occurred before GSL filed suit, they could not support GSL's lawsuit retaliation claim. [ECF No. 67, PageID.2846].

The Court denied the motion. *See* [ECF No. 70]. It acknowledged error, but held that the lawsuit retaliation claim still survived summary judgment. *Id.*

at PageID.2893 ("The Court concedes this error but correcting the mistake does not change the outcome of its summary judgment denial. There are additional fact issues in GSL's retaliation claim that rightfully should be presented to a jury, making summary judgment improper.").

The additional fact issues the Court referred to include findings (2) and (3) above. *See* [ECF No. 70, PageID.2893]. The Court should have made clear in that order that the sewer connection facts were not relevant to the lawsuit retaliation claim.

While the Township's acts related to the sewer connection issue may have been retaliatory, the Court dismissed the email retaliation claim to which the sewer connection facts applied.

Importantly, GSL never argued that the sewer connection facts created an independent retaliation claim separate from the email retaliation claim. *See* [ECF No. 51, PageID.2270 (GSL asserting in its statement of issues that the only two issues related to retaliation include whether the Township retaliated against GSL for exercising its right to address the Township Board, and whether the Township retaliated against GSL for exercising its right to file a lawsuit). Rather, GSL only argued that *one of the ways* the Township retaliated against it for emailing the Board was that it refused to let GSL

connect to the sewer at the rear of its property. *See id.* at PageID.2293-.2296 (GSL outlining the facts that support its email retaliation claim).

This distinction is important. Because GSL does not allege the sewer connection retaliation as an independent retaliation claim, the Court must conduct its analysis consistent with the way GSL pled its causes of action.

Since the email retaliation claim did not survive summary judgment, the sewer connection facts—which applied only to the email retaliation claim—cannot support GSL's remaining lawsuit retaliation claim.

In summation, the Court's order which denied reconsideration meant to, but failed to make clear, that the sewer connection facts are no longer relevant because the email retaliation claim those facts attached to was dismissed.

To the extent the Court's order denying reconsideration, ECF No. 70, conflicts with this order, the Court **AMENDS** ECF No. 70 in accordance with this opinion.

At the motion hearing, GSL stated that two of the categories of damages in the JFPTO were connected to the sewer connection retaliation. Consistent with the above clarification, categories 4 and 5 cannot be presented to the

jury:

4) Plaintiff also has incurred or will incur $155,000 in increased costs for having to construct the septic field rather than connect to the existing sewer line.

5) More importantly, the increase in overall cost of building construction is $1,635,100 as a result of inflationary pressure on construction supplies and labor in the last two years.

[ECF No. 78, PageID.3035] (the Township's numbering).

### B. GSL's remaining damage categories

For continuity's sake, the Court uses the numbering system set forth in the Township's second motion for summary judgment and in the JFPTO.

### 1) $8,337,638.00 in lost rents for a 10-year lease term

GSL describes this category of damages: "[u]nder the terms of the Moba lease with what would have been the existing tenant, GSL would have received at least $8,337,638.00 in rental payments and reimbursements over the initial 10-year term." [ECF No. 78, PageID.3035].

Moba Americas inquired about leasing GSL's property to construct a building for its business. In December 2020, Moba and GSL entered a lease agreement. In early 2021, it became clear that GSL could not have Moba's building constructed by October 2021, the month Moba sought to begin

11

operations. On May 4, 2021, Moba and GSL executed a lease termination agreement; GSL retained a $98,000 security deposit and Moba paid GSL an additional $100,000 to terminate the lease. Had the lease not been terminated, GSL would have received at least $8,337,638.00 in rental payments and reimbursements over the initial 10-year lease term.

Using the Moba lease as a benchmark, GSL says that if the Township had not retaliated against it and denied its application for speculative building status, GSL would have leased the property to another tenant for a term and rate similar to the Moba lease.

In response, the Township argues that GSL had no contractual obligation to allow Moba to terminate the lease, and had GSL enforced the lease agreement's terms, it would have had no loss of the lease, and it would not have needed to search for another tenant. The Township says instead, GSL chose to negotiate a termination of the Moba lease and receive in exchange $198,000, less than 2% of the value of the Moba lease. The Township says that the decision to terminate was GSL's voluntary decision, and GSL cannot now foist the loss of that multi-year, multimillion-dollar lease on the residents and taxpayers of Lyon Township.

GSL says that it did not "voluntarily" terminate the lease with Moba—the lease required that the building be completed by October of 2021 so Moba could move in, and when it was apparent that this could not happen, GSL had two choices: 1) be in breach of the lease, and face litigation with Moba, or 2) terminate the lease as requested. GSL says neither option was optimum. But when weighing them, GSL elected termination, and did not deliberately choose to lose Moba as a tenant.

GSL says it was between a rock and a hard place—but there was a third option. GSL could have enforced the Moba lease, gotten sued by Moba in October 2021 for breach, and impleaded the Township as a third-party defendant if GSL believed the Township's retaliation led to the loss of the Moba lease. *See* Fed. R. Civ. P. 14 (allowing the original defendant to shift some or all of potential liability onto a third party by impleading the third party as a defendant in the lawsuit). If GSL believed that the Township would be the entity responsible for any breach of GSL's lease with Moba, Rule 14 gave GSL the means to hold the Township liable, without the need for GSL to release Moba from the lease contract. GSL chose to forego this third option.

Even if the Court *did* believe that GSL had a Hobson's choice, this does not change the fact that GSL's decision was an intervening cause that breaks

the chain of causation necessary to hold the Township liable for GSL's damages.

"The basic purpose of § 1983 is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978) (holding that student could recover compensatory damages only if he proved actual injury caused by the denial of his constitutional rights)). "Proximate causation is an essential element of a § 1983 claim for damages." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir.), *cert. denied*, 115 S.Ct. 199 (1994). "[A] violation of a federally secured right is remediable in damages *only upon proof that the violation proximately caused injury*." *Id.* (emphasis added).

If a plaintiff's actions independently caused the injury, the plaintiff cannot recover damages. *See Grantham and Mann, Inc. v. American Safety Prods*, 831 F.2d 596, 606 (6th Cir. 1987).  In *Grantham and Mann*, plaintiffs sued a corporation for breach of contract. *Id.* at 600. The district court directed a verdict in the corporation's favor, reasoning that plaintiffs could not establish that the corporation was the cause of plaintiffs' damages as a matter of law. *Id.* at 600-01. The Sixth Circuit affirmed. It held that plaintiffs'

14

failure to take action required of it under the contract, not the corporation's actions, was the cause of injury. *Id.* at 606.

The same is true of GSL.

The *Grantham and Mann* decision relied on the law of intervening cause, which considers whether a defendant's actions were the direct and proximate cause of the plaintiff's harm, or if another event or party's action was the predominant cause. *See* 65 C.J.S. Negligence § 223 ("An intervening act may break the causal connection between a defendant's [harm] and the plaintiff's injury, and thus absolve the defendant of liability, if the intervening actor was a conscious and responsible agency that could or should have eliminated the hazard, and the intervening cause was not reasonably foreseeable by the defendant.").

An intervening cause breaks the chain of causation between the defendant's actions and the plaintiff's harm; in such cases, the defendant may not be held liable for the injury caused by the independent intervening cause because the defendant was not the predominant cause of harm. *See, e.g.*, *Inland Marine Serv., Inc. v. Ests. of Stack*, 183 F. Supp. 3d 844, 854 (S.D. Ohio 2016) ("A plaintiff's extraordinary negligence can constitute an intervening force that supersedes the defendant's prior negligence and

15

breaks the chain of proximate causation required to impose liability upon the defendant even though the defendant's negligent acts or omissions were a cause in fact of the plaintiff's death.").

GSL argues that, but for the Township's retaliatory conduct of rejecting its IDD status and denying its speculative building request, GSL would have signed a lease with a new tenant for the building. But GSL would not have needed to sign a lease with *any* tenant had it enforced its lease with its existing tenant Moba. In response to the Township's intervening cause argument, GSL states that "this is at best a factual question." [ECF No. 82, PageID.3223]. The Court is unpersuaded.

The Court finds as a matter of law that GSL significantly contributed to its own damages by allowing Moba to end its lease. This intervening cause independently breaks the chain of causation and relieves the Township of any liability for GSL's $8,337,638.00 in lost rents.

> 2) $1,118,607 in lost rents had a tenant occupied the building as planned on October 1, 2021 through September 30, 2023

In its second category of damages, GSL says that it is entitled to "[d]amages for lost rents and reimbursements had a tenant occupied the building as planned on October 1, 2021 through September 30, 2023 is

$1,118,607 (September 30, 2023 is the soonest the building would be complete for a new tenant if a lease were signed today)." [ECF No. 78, PageID.3035].

GSL says "the question of when damages resulting from lost rent or lost profits began is a factual question for the jury to decide." [ECF No. 82, PageID.3217]. "The jury may very well decide that GSL is entitled to all of its lost rent beginning October 1, 2021 due to the Township's refusal to allow GSL to connect to the sanitary sewer line" at the rear of GSL's property. *Id.* at PageID.3218].

It is unclear how these damages differ from GSL's first category of damages. Nonetheless, the above rationale applies here, too: GSL would not have lost rent had it enforced the Moba lease. Further, the sewer connection facts are no longer relevant, and cannot support this damage category.

Because it cannot establish causation, GSL is not entitled to damages in this category.

3) <u>Damages because GSL could not attract another tenant and mitigate its lost rent from the Moba lease</u>

In this category of damages, GSL says that "Plaintiff has not been able

17

to attract another tenant and mitigate its lost rent from the Moba lease because of the Township's retaliatory action of not processing its application for speculative building tax exemption and then disbanding the district. Plaintiff believes that it would have a tenant but for the Township's actions, based on its track record as a developer." [ECF No. 78, PageID.3035].

Again, the Court does not see how this category of damage differs from the two already discussed. They all rest on the same argument: because of the Township's retaliatory acts, GSL was unable to obtain another tenant for its property following Moba's release.

For the reasons above, GSL is not entitled to damages in this category.

Additionally, GSL's assertion that it would have obtained another tenant for the same 10-year term and rate as it did with Moba is speculative.

In *Grantham and Mann*, the plaintiffs argued that they were entitled to damages for defendant's breach of contract because plaintiffs "could have" sold all defendant's inventory because they "were good salesmen." *Grantham & Mann*, 831 F.2d at 601. The Sixth Circuit agreed with the district court that such a claim was too speculative to warrant a damage award for lost profits. *Id.* at 604. It reasoned that plaintiffs' proof of damages left

18

uncertain whether defendant's breach of contract resulted in any loss of profits, and that plaintiffs' thin proof "was clearly deficient in establishing the amount of damages with . . . reasonable certainty." *Id.* at 603. "The primary problem with [plaintiffs'] proof of damages is that it attempts to infer from the mere fact that [plaintiffs] had met [their] obligations under the existing contract," that plaintiffs would have been able to do it again. *Id.* at 603.

To support damages in this category, GSL says that it "believes that it would have a tenant but for the Township's actions, based on its track record as a developer." (This quote comes from the parties' JFPTO, which the parties did not file on the docket but sent to the Court directly.) This mirrors the plaintiffs' argument in *Grantham and Mann*. As the Township argues, GSL's assertion of its "belief" that its "track record as a developer" would have resulted in another tenant is almost identical to the *Grantham and Mann* plaintiffs' claim that they were "good salesmen."

This category of damages is speculative; it fails as a matter of law.

6) <u>$4,420,043 for the loss of property value from January 1, 2022 to May 1, 2023</u>

GSL describes this category of damages: "the loss of [property] value from January 1, 2022 to May 1, 2023 is $4,420,043 as a result of a rising

interest rate environment. . . . Valuation of this asset has gone down tremendously from the date of injury." [ECF No. 78, PageID.3035].

Loss of property values is a valid type of damages that a plaintiff may pursue, so long as relevant causation exists. *See, e.g.*, *Evanston Ins. Co. v. Cogswell Properties, LLC*, 730 F. Supp. 2d 748, 753 (W.D. Mich. 2010), aff'd, 683 F.3d 684 (6th Cir. 2012).

GSL says the loss of property value directly resulted from the Township's retaliation of denying its application for speculative building status. The Township argues that it is unclear how the claim that Lyon Township denied GSL's application for speculative building status could have caused the loss of value of the property.

GSL does not respond to this argument in its brief. *See* [ECF No. 82, PageID.3222] (GSL's discussion addressing the Township's arguments related to the speculative building status issue). The issue is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

20

Even if GSL did respond to the Township's argument in some remote part of its brief, it fails to establish "developed argumentation" sufficient for the Court to adequately consider.

7) <u>Damages for lost opportunities and loss of goodwill and reputation</u>

GSL describes its last category of damages as: "Plaintiff additionally has suffered lost opportunities and loss of goodwill and reputation, the amounts for which would be determined by the jury." [ECF No. 78, PageID.3035].

The Township says that these damages are speculative.

Damages will be considered uncertain or speculative when their existence is uncertain, or when proof is insufficient to enable the trier of fact to make a fair and reasonable assessment of damages. *See Grantham and Mann*, 831 F.2d at 601–02; *Ervin v. Nashville Peace & Just. Ctr.*, 673 F. Supp. 2d 592 (M.D. Tenn. 2009). "This rule serves to preclude recovery, however, only where the fact of damage is uncertain, i.e., where the damage claimed is not the certain result of the wrong, not where the amount of damage alone is uncertain." *Grantham and Mann*, 831 F.2d at 601–02; *see also Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 837 (6th Cir. 2007) ("Damages cannot be speculative, but this only means that the fact of damages, not their

amount, cannot be uncertain.).

The Township cites *Med. Corp. Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002), which held that for damage claims of loss of reputation and goodwill, a plaintiff must offer a court "at least some evidence that the actions of the state served to stigmatize [their] business. *Id.* at 416 (internal quotes omitted). Though *Med. Corp.* discussed the loss of reputation in the context of a Fourteenth Amendment property interest claim and not a First Amendment retaliation claim, its rationale is sound and applies with equal force here.

In response, GSL says that it does offer evidence that the Township's actions stigmatized it. GSL says it is a matter of public record that: 1) the Township refused to process GSL's application for speculative business status; 2) the Township singled out GSL for adverse treatment when it dissolved the IDD #11 only as to GSL; and 3) the Township denied GSL's applications while granting the applications of other businesses, including the application submitted by Moba, GSL's former tenant who moved to a different building.

GSL argues that there can be no question that if a prospective tenant inquires about tax abatements for the building, review of the Township's

treatment of GSL could cause that prospective tenant to have a negative view of GSL.

The fact that the Township's treatment of GSL "is a matter of public record," by itself, is insufficient to show that GSL's reputation was harmed. GSL must take the next step and offer affirmative evidence that this "matter of public record" led people to treat GSL differently. *See Med. Corp.*, 296 F.3d at 416.

GSL says it can take that step. It argues that fact issues exist and a jury must determine whether GSL suffered a loss of goodwill and/or reputation as a result of the Township's actions.

Assuming that GSL can win on liability, the Court is satisfied that fact issues exist pertaining to this category of damages.

### V. CONCLUSION

The Court amends ECF No. 70, as described above.

The Court cannot consider GSL's damages in category 4 and 5 as a matter of law. GSL cannot prove its damages as a matter of law in categories 1, 2, 3, and 6. However, fact issues exist to support that GSL can be awarded damages for category 7: loss of reputation and

goodwill. Because GSL has a viable claim for damages in one category, summary judgment is improper.

The Township's expert testimony arguments, which it incorporated into this motion from its motions in limine, are left for the consideration of the judge who will try this case.

The Court **DENIES** the Township's second motion for summary judgment.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  7/31/2023